Appeal No. 2016-1402

# United States Court of Appeals

*for the*

# Federal Circuit

IN RE APPLE INC.,

*Appellant.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD IN REEXAMINATION CONTROL
NO. 90/012,332

## BRIEF FOR *AMICI CURIAE* SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC. IN SUPPORT OF APPELLEE AND AFFIRMANCE

VICTORIA F. MAROULIS
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
(650) 801-5000

KATHLEEN M. SULLIVAN
WILLIAM B. ADAMS
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Amici Curiae*

August 9, 2016

# <u>CERTIFICATE OF INTEREST</u>

Counsel for the Amici Curiae certifies the following:

**1.  The full name of every party or amicus represented by me is:**

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

**2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

None.

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Samsung Electronics America, Inc. ("SEA") is a wholly-owned subsidiary of

Samsung Electronics Co., Ltd. ("SEC"), a publicly held corporation organized under

the laws of the Republic of Korea.  SEC is not owned by any parent corporation and

no other publicly held corporation owns 10% or more of its stock.  No other publicly

held corporation owns 10% or more of SEA's stock.

**4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:**

QUINN EMANUEL URQUHART & SULLIVAN, LLP: Kathleen M. Sullivan;

Victoria F. Maroulis; William B. Adams.

Respectfully submitted,

Dated:  August 9, 2016          /s/ Kathleen M. Sullivan
                                Kathleen M. Sullivan

i

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ................................................................................. i

TABLE OF AUTHORITIES ................................................................................. iii

INTEREST OF AMICI CURIAE .......................................................................... 1

ARGUMENT ........................................................................................................ 4

I.     CONGRESS CREATED THE *EX PARTE* REEXAMINATION PROCEDURE SO THAT THE PTO COULD CANCEL INVALID PATENTS QUICKLY, BEFORE THEY ARE IMPROPERLY USED IN COURT ........................................................................................... 4

II.    THIS COURT SHOULD PROMPTLY AFFIRM THE PTAB'S DECISION AND THEREBY PREVENT APPLE FROM FURTHER UNDERMINING THE *EX PARTE* REEXAMINATION PROCESS ........... 7

     A.    Apple Wasted Tremendous Resources Accelerating The Federal Court Litigation Concerning The Invalid '915 Patent ......................... 8

     B.    Apple Has Dragged Out The *Ex Parte* Reexamination Process As Much As Possible .......................................................................... 9

CONCLUSION .................................................................................................. 13

PROOF OF SERVICE ....................................................................................... 14

CERTIFICATE OF COMPLIANCE ................................................................. 15

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## <u>Cases</u>

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed. Cir. 1983) ...........................................................6

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) ...............................................................................5

*Hyatt v. Kappos*,
  625 F.3d 1320 (Fed. Cir. 2010) ...........................................................5

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
  635 F.3d 539 (Fed. Cir. 2011) .............................................................5

*Patlex Corp. v. Mossinghoff*,
  758 F.2d 594 (Fed. Cir.), *on reh'g*, 771 F.2d 480 (1985)....................6

*In re Recreative Techs. Corp.*,
  83 F.3d 1394 (Fed. Cir. 1996) .........................................................4, 6

## <u>Statutes, Regulations, & Rules</u>

35 U.S.C. § 302 ............................................................................................4

37 C.F.R. § 41.52 .......................................................................................10

Fed. R. App. P. 29(a) ...................................................................................1

Fed. R. App. P. 29(c)(5) ..............................................................................1

## <u>Other Authorities</u>

126 Cong. Rec. 29895 (Nov. 17, 1980) .....................................................5

145 Cong. Rec. 19262 (Aug. 3, 1999) ........................................................5

147 Cong. Rec. E1191-03 (June 25, 2001)..................................................4

H.R. Rep. No. 96-1307(Part I) (Sept. 9, 1980)........................................4, 6

Charles Duhigg & Steven Lohr, *The Patent, Used as a Sword*,
  N.Y. TIMES, Oct. 7, 2012 ..................................................................................3

*Patent Reexamination: Hearings on S. 1679 Before the Comm. on the
  Judiciary,* 96th Cong., 1st Sess. (1979) ...............................................................5

Joff Wild, *The Biggest US Patent Portfolio is not owned by IBM, but by Samsung
  Electronics,* IAM Blog (April 11, 2016) .............................................................3

*Amici curiae* Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Amici") respectfully submit this brief in support of appellee Michelle K. Lee, Director, U.S. Patent and Trademark Office, and in support of affirmance of the order of the Patent Trial and Appeal Board ("PTAB") that affirmed the Examiner's decision to reject all claims of U.S. Patent No. 7,844,915 ("the '915 patent") as unpatentable.

## INTEREST OF AMICI CURIAE[1]

Samsung Electronics Co., Ltd. is the parent company for Samsung's global electronics enterprises. Samsung Electronics America, Inc. is a U.S.-based, wholly-owned subsidiary of Samsung Electronics Co., Ltd. that delivers a broad range of digital consumer electronics, mobile products and wearables, wireless infrastructure, IT and home appliance products.

Samsung is renowned for its innovations in consumer electronics (ranging from cutting-edge mobile phones and televisions to washing machines and refrigerators) and semi-conductor technology. Just a few of its recent accolades include: a top-ten ranking in Interbrand's Global Brands; numerous Consumer

---

[1]    Pursuant to Federal Rule of Appellate Procedure 29(c)(5), counsel for Amici represent that they authored this brief in its entirety and that none of the parties or their counsel, nor any person or entity other than Amici and their counsel, made a monetary contribution intended to fund the preparation or submission of this brief. A Motion For Leave To File has been filed concurrent with this brief pursuant to Federal Rule of Appellate Procedure 29(a).

1

Electronics Show awards, including more than 100 awards in 2016; and numerous International Forum Design awards, including thirty-eight awards in 2016.

Samsung has a unique perspective on Apple's appeal of the PTO's rejection of the '915 patent because Samsung has spent the last five years defending itself against Apple's efforts to extract millions of dollars in damages from Samsung for supposed infringement of claim 8 of that very patent. This litigation has been costly in absolute terms: not only has Samsung had to pay Apple more than $113 million in damages for infringement of a patent found to be wholly invalid by a PTO Examiner and the PTAB, but Samsung has incurred substantial legal fees and costs defending itself against those claims of infringement. Apple's claims have also caused Samsung to divert significant resources, including personnel time that could have been spent developing and promoting new products. This litigation has been a costly absorption of judicial time as well, with two juries already having had to consider claims involving the '915 patent, and a third trial having been stayed earlier this year—over Apple's objection—pending the Supreme Court's review of other aspects of the case.

While Samsung has the resources to defend itself in court, survive in the marketplace, and continue to innovate, many defendants are not as fortunate when they face a resource-rich company aggressively wielding an invalid patent. Smaller

2

companies, and especially individual innovators, have lost millions and had their businesses destroyed as a result of unreasonable patent assertion.[2]

Samsung owns more U.S. patents than any other company (with more than 63,000 active patents[3]) and thus is acutely aware of the competitive advantages of having initial determinations of patentability stand. But Samsung submits this brief advocating for a quick, efficient process for *ex parte* reexamination because it believes that the patent system works best when patents asserted in court and against competitors are those that are actually valid. As explained below, Apple subverted this process at every turn, pushing forward with its claims against Samsung in litigation, while dragging out the PTO proceedings and thereby creating the untenable situation in which Samsung has been required to pay over $113 million for infringement of a patent that the PTO, with its specialized expertise, has found to be invalid.

---

[2]  *See, e.g.,* Charles Duhigg & Steven Lohr, *The Patent, Used as a Sword*, N.Y. TIMES, Oct. 7, 2012, *available at* http://www.nytimes.com/2012/10/08/ technology/patent-wars-among-tech-giants-can-stifle-competition.html.

[3]  *See* Joff Wild, *The Biggest US Patent Portfolio is not owned by IBM, but by Samsung Electronics,* IAM Blog (April 11, 2016), *available at* http://www.iam-media.com/blog/Detail.aspx?g=b174a267-c73b-4f99-aa9b-dd4b21f3e217.

# ARGUMENT

## I. CONGRESS CREATED THE *EX PARTE* REEXAMINATION PROCEDURE SO THAT THE PTO COULD CANCEL INVALID PATENTS QUICKLY, BEFORE THEY ARE IMPROPERLY USED IN COURT

Congress had three interrelated purposes in establishing *ex parte* reexaminations as part of the 1980 Amendments to the Patent Act, 35 U.S.C. § 302 *et seq*. *First*, Congress sought to provide a quick, cost-effective procedure for challenging potentially invalid patents. As the House Report accompanying enactment of the reexamination statute explained: "Reexamination will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation." H.R. Rep. No. 96-1307 (Part 1), at 3-4 (Sept. 9, 1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6462-63. Specifically, Congress intended the procedure to enable the "reexamination of issued patents … [in] a fraction of the time and cost of formal legal proceedings." *Id.*; *see also* 147 Cong. Rec. E1191 (June 25, 2001) ("The patent reexamination system was designed to be an efficient and fair procedure for reviewing the validity of patents when there is a substantial reason to call that validity into question.") (Hon. Zoe Lofgren discussing proposed Patent Reexamination Enhancement Act); *In re Recreative Techs. Corp.*, 83 F.3d 1394, 1396 (Fed. Cir. 1996) ("The proponents of

reexamination anticipated … reexamination … could resolve validity disputes more quickly and less expensively than litigation.").

*Second*, through *ex parte* reexamination Congress sought to prioritize the expertise of the Patent Office in interpreting patents and assessing their validity. *Patent Reexamination: Hearings on S. 1679 Before the Comm. on the Judiciary,* 96th Cong., 1st Sess., at 1 (1979) (statement of Sen. Bayh); *see also* 126 Cong. Rec. 29895 (Nov. 17, 1980) (statement of Rep. Kastenmeier) (reexamination would allow PTO to review "doubtful patents"). Indeed, almost two decades after first authorizing *ex parte* reexaminations, Congress reaffirmed the importance of reexaminations in "permit[ing] courts to defer issues of patent validity to the expertise of the PTO." 145 Cong. Rec. 19262 (Aug. 3, 1999) (statement of Rep. Rohrabacher) (discussing original reexamination procedure in connection with proposed legislation on reducing patent litigation). *Ex parte* reexaminations thus seek to ensure that, as the Supreme Court has recognized, "the primary responsibility for sifting out unpatentable material lies in the Patent Office." *Graham v. John Deere Co.*, 383 U.S. 1, 18 (1966).[4]

---

[4]    This Court has repeatedly affirmed the PTO's expertise in construing patents and determining their validity. *E.g., Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 548 (Fed. Cir. 2011) ("The PTO has acknowledged expertise in evaluating prior art and assessing patent validity."); *Hyatt v. Kappos,* 625 F.3d 1320, 1334 (Fed. Cir. 2010) (en banc) (recognizing the deference owed the PTO as

*Third*, through the reexamination procedure's efficiency and reliance on PTO expertise, Congress intended to "help restore confidence in the effectiveness of our patent system" and "promote industrial innovation by assuring the kind of certainty about patent validity which is a necessary ingredient of sound investment decisions." H.R. Rep. No. 96-1307(I), at 3-4, *reprinted in* 1980 U.S.C.C.A.N. 6460, 6462-63; *see also Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 601 (Fed. Cir.), *on reh'g*, 771 F.2d 480 (1985) (explaining that the reexamination "statute was part of a larger effort to revive United States industry's competitive vitality by restoring confidence in the validity of patents issued by the PTO.").

In practice, the reexamination procedure has proven a valuable tool for reducing the number of invalid patents, as Congress had desired: the overwhelming majority—78%—of the patents reexamined *ex parte* are found to contain invalid claims, resulting in the PTO either cancelling the patent in full (12%) or modifying

---

"the knowledgeable agency charged with assessing patentability"). This is especially so in the context of reexaminations. *E.g., Recreative Techs.*, 83 F.3d at 1396 (reexamination was intended to allow courts to "benefit from the expertise of the PTO"); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).").

its claims (66%).[5]  And *ex parte* reexaminations have generally proceeded at a relatively fast clip as Congress intended:  In FY2014 (the most recent year for which data is available), the median *ex parte* reexamination took only 15.9 months from filing to issuance of the reexamination certificate.  *See id.*

## II.    THIS COURT SHOULD PROMPTLY AFFIRM THE PTAB'S DECISION AND THEREBY PREVENT APPLE FROM FURTHER UNDERMINING THE *EX PARTE* REEXAMINATION PROCESS

Apple's aggressive assertion of the invalid '915 patent in litigation, combined with its dilatory conduct in the '915 reexamination proceedings, has thwarted Congress's objectives in establishing the *ex parte* reexamination as a means of obtaining prompt cancellation of invalid claims.  Indeed, as shown below, Apple managed to accelerate the federal court litigation, while repeatedly delaying the reexamination process—which, at over 1500 days, is now already more than *three times* the median *ex parte* reexamination.

---

[5]    *See Ex Parte Reexamination Filing Data*, U.S. Pat. & Trademark Off., http://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up_EOY2014.pdf (summarizing data from July 1981 through Sep. 30, 2014).

### A.     Apple Wasted Tremendous Resources Accelerating The Federal Court Litigation Concerning The Invalid '915 Patent

In federal court, Apple rushed through litigation on the invalid '915 patent, seeking to expedite the trial, and opposing stays at every turn.[6] Thus, Apple managed to have trial on the '915 patent begin 15 months from the date of filing its initial complaint—faster than the median time for *ex parte* reexamination.[7]

Thus far, Apple has required a federal district judge, two separate juries, and three judges of this Court to evaluate the purported infringement of the invalid '915 patent and/or damages on it.[8]  Over Apple's most recent objection to a stay, earlier this year, a third jury has so far been spared further deliberation regarding the '915 patent pending the Supreme Court's review of other portions of Apple's lawsuit.[9]

---

[6]  *See Apple, Inc. v. Samsung Electronics Co. Ltd.* ("*Federal Court Case*"), No. 5:11-cv-01846-LHK (N.D. Cal.), ECF No. 10 (Apple's Mot. to Exped. Disc.) (April 19, 2011); *id.*, ECF No. 83 (Apple's Mot. to Exped. Trial) (July 1, 2011); *id.*, ECF No. 84 (Apple's Mot. to Short. Time for Brief. on Mot. to Exped. Trial) (July 1, 2011); *id.*, ECF No. 2816 (Apple's Opp. to Samsung's Mot. Stay Trial Pend. Reexam.) (Nov. 20, 2013); *id.*, ECF No. 3278 (Apple's Opp. to Samsung's Mot. to Stay Proc. Pend. '915 PTAB Appeal); *id.*, ECF No. 3468 (Apple's Opp. to Samsung's Mot. to Stay Proc. Pend. Supreme Ct. Review) (Mar. 21, 2016).

[7]  *See Ex Parte Reexamination Filing Data*, *supra*.

[8]  *See Federal Court Case*, ECF No. 1931 (First Am. Jury Verdict) (Aug. 24, 2012); *id.*, ECF No. 2822 (Second Jury Verdict) (Nov. 21, 2013); *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 2014-1335 (Fed. Cir.).

[9]  *See Federal Court Case*, ECF No. 3468 (Apple's Opp. to Samsung's Mot. to Stay Proc. Pend. Supreme Ct. Review) (Mar. 21, 2016) (asking district court to

As a result of this time consuming and expensive litigation, Apple has already received more than $113 million in damages for the invalid '915 patent from Samsung.[10]  Apple asserts (Br. 1) that this case will have no effect on the damages that Samsung has already paid, but Samsung has expressly reserved its rights to seek reimbursement of damages paid for purported infringement of the '915 patent as a result of the final outcome of the reexam.[11]  And Apple is still seeking millions of dollars more for infringement of the '915 patent by Samsung phones that are at issue in the now-stayed retrial.[12]  All the while, Apple has effectively chilled the use of an obvious gesture input for mobile devices by manufacturers, and consequently by consumers.

### B.   Apple Has Dragged Out The *Ex Parte* Reexamination Process As Much As Possible

While aggressively pushing for a speedy final judgment against the invalid '915 patent in federal court, Apple has done everything it could to slow the *ex parte*

---

deny the stay); *id.*, ECF No. 3472 (Order Granting Samsung's Mot. to Stay) (Mar. 22, 2016) (granting stay over Apple's opposition).

[10]  *See, e.g.*, *Federal Court Case*, ECF No. 2877, at 4:10 (Samsung's Motion for JMOL) (Dec. 13, 2013) (describing award of lost profits for over $113 million).

[11]  *See Federal Court Case*, ECF No. 3322 (Joint Case Management Statement) (Dec. 3, 2015).

[12]  *See Federal Court Case*, ECF No. 3394-1, at 2 (Damages Remedy Chart) (Feb. 18, 2016) (showing additional products at issue in now-stayed trial).

reexamination process that began with a request for reexamination on May 30, 2012. Apple sought repeated extensions.[13]  Apple requested an in-person interview with the Examiner[14] and submitted redundant (but "new") expert reports.[15]  Apple appealed the Examiner's final rejection determination to the PTAB on the last day to file a notice of appeal.[16]  After the PTAB affirmed the Examiner's determination (Appx1-13), Apple sought rehearing of the PTAB's decision, again on the last possible day.[17]  Once the PTAB's rehearing decision was issued seven months later (Appx14-21), Apple waited two more months before filing its notice of appeal to this Court (Appx935-936).  Then, after Apple's appeal was docketed in this Court forty days later (*see* ECF No. 1), Apple sought and obtained a 60-day extension in which to file its opening brief in this Court (*see* ECF Nos. 10-11).  And just prior to

---

[13]    *See* Reexam. Control No. 90/012,332 ("'915 Reexam"), Apple's Pet. for Extens. of Time (Jan. 11, 2013) (requesting one-month extension); *id.*, Apple's Pet. for Extens. of Time (Sept. 6, 2013) (requesting one-month extension).

[14]    *See* '915 Reexam, Letter Req. Interview with Examiner (Oct. 3, 2013).

[15]    *See* '915 Reexam, Resp. to Final Office Action, Dec. of Scott Klemmer (Oct. 28, 2013); *id.*, Response to Non-Final Office Action, Dec. of Jason Nieh (Mar. 18, 2013).

[16]    *See* '915 Reexam, Notice of Appeal (Dec. 26, 2013) (challenging Examiner's July 26, 2013 decision and November 20, 2013 advisory action); *id.*, Advisory Action (Nov. 20, 2013) (setting deadline for appeal to 5 months after final rejection: December 26, 2013).

[17]    *See* '915 Reexam, Apple's Req. for Reh'g (Feb. 9, 2015); 37 C.F.R. § 41.52 (setting two-month deadline to request rehearing from PTAB decision).

the submission of this brief, Apple sought and obtained another extension—this time, a 21-day extension of the deadline for its reply brief (*see* ECF Nos. 34, 36).

In all, 422 days passed from the filing of the reexamination request to the Examiner's final decision; an additional 501 days passed from the Examiner's final decision to the PTAB's decision; 289 more days passed from the PTAB's initial decision to its rehearing decision; and another 222 days passed from the PTAB's rehearing decision to the date Apple filed its opening brief in this Court, 98 days ago. This 1,532-day (and counting) duration is more than *three times* the median time for a final determination on reexamined claims (roughly 480 days).[18]

As Apple itself recently argued when the PTO found patents asserted against it invalid, such a protracted timeline for reexamination undermines the "compelling public policy" of avoiding delays in adjudicating invalid patents. *See Mangrove Partners Master Fund & Apple, Inc. v. VirnetX*, IPR2015-01046 (Pat. Trial & App. Board), Paper No. 53 at 3-5 (Apple Separate Reply) (May 9, 2016) (arguing that further delay for patentee that had "extend[ed] *every* deadline" in a "campaign of delay" to prevent final invalidation "should not be tolerated any further") (emphasis in original). That policy is particularly strong here, where Apple did not need additional time due to resource constraints or unusually complex arguments. For

---

[18]  *See Ex Parte Reexamination Filing Data*, *supra*.

11

example, in contrast to its professed inability to comply with the deadlines in this proceeding without extensions, in litigation Apple managed to articulate its defense of the validity of eight patents, including the '915 patent and two other utility patents, in the span of two weeks.[19]  Apple also briefed the validity of the '915 patent, along with many other issues, in sixteen days after the first trial.[20]  Thus, Apple's repeated requests to delay reexamination proceedings here reflect a deliberate tactical decision to engage in the same type of "campaign of delay" that Apple has condemned when waged against it.

Now Apple asks this Court either to disregard the expertise of the PTO Examiner and the PTAB outright or to remand for further consideration in the hope that it can push out any entirely final decision on the validity of the '915 patent until after the conclusion of the federal court action involving that patent.  For the reasons set forth in appellee's brief, Apple's arguments have absolutely no merit.  This Court should put an end to Apple's abuse of the patent system and affirm the PTO's rejection of all claims of the '915 patent.

---

[19]  *See Federal Court Case* ECF No. 997-2 (Apple Opp. to Samsung Mot. for Sum. Judg.) (May 31, 2012).

[20]  *See Federal Court Case*, ECF No. 2050 (Apple Opp. to Samsung's Mot. for JMOL) (Oct. 19, 2012).

12

## **CONCLUSION**

The PTAB's decision affirming the rejection of all claims in the '915 patent should be promptly affirmed.


Dated:  August 9, 2016                    Respectfully submitted,

                                         /s/ Kathleen M. Sullivan
                                         Kathleen M. Sullivan
Victoria F. Maroulis                     William B. Adams
QUINN EMANUEL URQUHART                   QUINN EMANUEL URQUHART
  & SULLIVAN, LLP                          & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor        51 Madison Avenue, 22nd Floor
Redwood Shores, CA 94065                 New York, NY 10010
(650) 801-5000                           (212) 849-7000
                                         kathleensullivan@quinnemanuel.com

                        *Attorneys for Amici Curiae*

## **PROOF OF SERVICE**

The undersigned hereby certifies that on August 9, 2016, I electronically filed the foregoing BRIEF OF AMICI CURIAE with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Kathleen M. Sullivan
Kathleen M. Sullivan

14

# <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Amici Curiae hereby certifies that:

1.      This brief complies with the type-volume limitation in Fed. R. App. P. 29(d) because it contains 2,834 words as counted by the word processing program used to prepare this brief.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Office Word 2014 in a proportionately spaced typeface:  Times New Roman, font size 14.

Dated:  August 9, 2016                                    /s/ Kathleen M. Sullivan
                                                                  Kathleen M. Sullivan